1   KAREN P. HEWITT
    United States Attorney
2   WILLIAM A. HALL, JR.
    Assistant U.S. Attorney
3   California State Bar No. 253403
    United States Attorney's Office
4   880 Front Street, Room 6293
    San Diego, California 92101-8893
5   Telephone: (619) 557-7046/(619) 235-2757 (Fax)
    Email: william.a.hall@usdoj.gov
6
    Attorneys for Plaintiff
7   United States of America

8                  UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 07CR3413-BEN |
| | ) | |
| Plaintiff, | ) | DATE:      February 4, 2008 |
| | ) | TIME:      2:00 p.m. |
| v. | ) | Before Honorable Roger T. Benitez |
| | ) | |
| MARISOL RENOVATO, | ) | UNITED STATES' STATEMENT OF |
| | ) | FACTS AND MEMORANDUM OF |
| Defendant(s). | ) | POINTS AND AUTHORITIES |
| | ) | |

## I

## __STATEMENT OF THE CASE__

The Defendant, Marisol Renovato (hereinafter "Defendant"), was charged by a grand jury on December 19, 2007 with violating 21 U.S.C. §§ 952 and 960, importation of methamphetamine, and 21 U.S.C. § 841(a)(1), possession of methamphetamine with the intent to distribute. Defendant was arraigned on the Indictment on December 20, 2007, and entered a plea of not guilty.

## II

## __STATEMENT OF FACTS__

Defendant was apprehended on the afternoon of December 6, 2007, by United States Customs and Border Protection ("CBP") Officers at the Andrade, California Port of Entry. There,

Defendant entered the vehicle inspection lanes as the driver and registered owner of a silver 1997 Volkswagen Jetta ("the vehicle"). She was accompanied by a passenger, her minor daughter.

At primary inspection, Defendant gave a negative Customs declaration to a CBP Officer. During the inspection, Defendant's minor daughter appeared nervous and kept looking to the rear of the vehicle. The vehicle and its occupants were then referred to the secondary lot for further inspection.

At secondary inspection, Defendant provided another negative Customs declaration. A CBP Officer then screened the vehicle with his service canine. The dog alerted to the vehicle. Another CBP Officer then discovered one package concealed within a specially-built compartment in the back seat rest of the vehicle. The CBP Officer removed the package, which was a zip-lock bag wrapped in cellophane. Inside the zip-lock bag, he discovered three plastic bags containing a white substance. A sample of the substance tested positive for methamphetamine. The package, weighing 0.8309 kilograms (1.8318 pounds), was removed from the vehicle. Defendant was then arrested; Defendant's minor daughter was later released.

**III**

**MEMORANDUM OF POINTS AND AUTHORITIES**

A.    **DISCOVERY REQUESTS AND MOTION TO PRESERVE EVIDENCE**

    1.    **The Government Has or Will Disclose Information Subject To Disclosure Under Rule 16(a)(1)(A) and (B) Of The Federal Rules Of Criminal Procedure**

The government has disclosed, or will disclose well in advance of trial, any statements subject to discovery under Fed. R. Crim. P. 16(a)(1)(A) (substance of Defendant's oral statements *in response to government interrogation*) and 16(a)(1)(B) (Defendant's relevant written or recorded statements, written records containing substance of Defendant's oral statements *in response to government interrogation*, and Defendant's grand jury testimony).

    a.    The Government Will Comply With Rule 16(a)(1)(D)

Defendant has already been provided with his or her own "rap" sheet and the government will produce any additional information it uncovers regarding Defendant's criminal record. Any

1  subsequent or prior similar acts of Defendant that the government intends to introduce under Rule

2  404(b) of the Federal Rules of Evidence will be provided, along with any accompanying reports,

3  at a reasonable time in advance of trial.

b.    The Government Will Comply With Rule 16(a)(1)(E)

5  The government will permit Defendant to inspect and copy or photograph all books, papers,

6  documents, data, photographs, tangible objects, buildings or places, or portions thereof, that are

7  material to the preparation of Defendant's defense or are intended for use by the government as

8  evidence-in-chief at trial or were obtained from or belong to Defendant.

9  Reasonable efforts will be made to preserve relevant physical evidence which is in the

10  custody and control of the investigating agency and the prosecution, with the following exceptions:

11  drug evidence, with the exception of a representative sample, is routinely destroyed after 60 days,

12  and vehicles are routinely and periodically sold at auction.  Records of radio transmissions, if they

13  existed, are frequently kept for only a short period of time and may no longer be available.

14  Counsel should contact the Assistant United States Attorney assigned to the case two weeks before

15  the scheduled trial date and the Assistant will make arrangements with the case agent for counsel

16  to view all evidence within the government's possession.

c.    The Government Will Comply With Rule 16(a)(1)(F)

18  The government will permit Defendant to inspect and copy or photograph any results or

19  reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof,

20  that are within the possession of the government, and by the exercise of due diligence may become

21  known to the attorney for the government and are material to the preparation of the defense or are

22  intended for use by the government as evidence-in-chief at the trial.  Counsel for Defendant should

23  contact the Assistant United States Attorney assigned to the case and the Assistant will make

24  arrangements with the case agent for counsel to view all evidence within the government's

25  possession.

26

27

28                                    5                          07CR3413-BEN

1

2
　　　　　d.　　The Government Will Comply With Its Obligations Under <u>Brady v.</u>
<u>Maryland</u>

3
　　　　The government is well aware of and will fully perform its duty under <u>Brady v. Maryland</u>,

4
373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), to disclose exculpatory

5
evidence within its possession that is material to the issue of guilt or punishment.  Defendant,

6
however, is not entitled to all evidence known or believed to exist that is, or may be, favorable to

7
the accused, or that pertains to the credibility of the government's case.  As stated in <u>United States</u>

8
<u>v. Gardner</u>, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

9

10
> [T]he prosecution does not have a constitutional duty to disclose every bit of
> information that might affect the jury's decision; it need only disclose information
> favorable to the defense that meets the appropriate standard of materiality.

11
611 F.2d at 774-775 (citations omitted).  <u>See</u> <u>also</u> <u>United States v. Sukumolachan</u>, 610 F.2d 685,

12
687 (9th Cir. 1980) (the government is not required to create exculpatory material that does not

13
exist); <u>United States v. Flores</u>, 540 F.2d 432, 438 (9th Cir. 1976) (<u>Brady</u> does not create any

14
pretrial privileges not contained in the Federal Rules of Criminal Procedure).

15
　　　　　e.　　<u>Discovery Regarding Government Witnesses</u>

16
　　　　　　　　(1)　　<u>Agreements.</u>  The government has disclosed or will disclose the

17
terms of any agreements by Government agents, employees, or attorneys with witnesses that testify

18
at trial.  Such information will be provided at or before the time of the filing of the Government's

19
trial memorandum.[1]  The government will comply with its obligations to disclose impeachment

20
evidence under <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

21
　　　　　　　　(2)　　<u>Bias or Prejudice.</u>  The government has provided or will provide

22
information related to the bias, prejudice or other motivation to lie of government trial witnesses

23
as required in <u>Napue v. Illinois</u>, 360 U.S. 264 (1959).

24

25

26

27
[1]　　As with all other offers by the government to produce discovery earlier than it is required to do, the offer is made without prejudice.  If, as trial approaches, the government is not prepared to make early discovery production, or if there is a strategic reason not to do so as to certain discovery, the government reserves the right to withhold the requested material until the time it is required to be produced pursuant to discovery laws and rules.

28
　　　　　　　　　07CR3413-BEN

1         (3)     Criminal Convictions.  The government has produced or will

2  produce any criminal convictions of government witnesses plus any *material* criminal acts which

3  did not result in conviction.  The government is not aware that any prospective witness is under

4  criminal investigation.

5         (4)     Ability to Perceive.  The government has produced or will produce

6  any evidence that the ability of a government trial witness to perceive, communicate or tell the

7  truth is impaired or that such witnesses have ever used narcotics or other controlled substances,

8  or are alcoholics.

9         (5)     Witness List.  The government will endeavor to provide Defendant

10  with a list of all witnesses which it intends to call in its case-in-chief at the time the government's

11  trial memorandum is filed, although delivery of such a list is not required.  See United States v.

12  Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986);

13  United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).  Defendant, however, is not entitled to

14  the production of addresses or phone numbers of possible government witnesses.  See United

15  States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977), cert. denied, 419 U.S. 834 (1974).

16  Defendant has already received access to the names of potential witnesses in this case in the

17  investigative reports previously provided to him or her.

18         (6)     Witnesses Not to Be Called.  The government is not required to

19  disclose all evidence it has or to make an accounting to Defendant of the investigative work it has

20  performed.  Moore v. Illinois, 408 U.S. 786, 795 (1972); see United States v. Gardner, 611 F.2d

21  770, 774-775 (9th Cir. 1980).  Accordingly, the government objects to any request by Defendant

22  for discovery concerning any individuals whom the government does not intend to call as

23  witnesses.

24         (7)     Favorable Statements.  The government has disclosed or will

25  disclose the names of witnesses, if any, who have made favorable statements concerning Defendant

26  which meet the requirements of Brady.

27

28                                   7             07CR3413-BEN

1    (8)    Review of Personnel Files.  The government has requested or will

2    request a review of the personnel files of all federal law enforcement individuals who will be called

3    as witnesses in this case for Brady material.  The government will request that counsel for the

4    appropriate federal law enforcement agency conduct such review.  United States v. Herring, 83

5    F.3d 1120 (9th Cir. 1996); see, also, United States v. Jennings, 960 F.2d 1488, 1492 (9th Cir.

6    1992); United States v. Dominguez-Villa, 954 F.2d 562 (9th Cir. 1992).

7    Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and United States v.

8    Cadet, 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information favorable

9    to the defense that meets the appropriate standard of materiality . . ." United States v. Cadet, 727

10   F.2d at 1467, 1468.  Further, if counsel for the United States is uncertain about the materiality of

11   the information within its possession in such personnel files, the information will be submitted to

12   the Court for in camera inspection and review.

13   (9)    Government Witness Statements.  Production of witness statements

14   is governed by the Jencks Act, 18 U.S.C. § 3500, and need occur only after the witness testifies

15   on direct examination. United States v. Taylor , 802 F.2d 1108, 1118 (9th Cir. 1986); United States

16   v. Mills, 641 F.2d 785, 790 (9th Cir. 1981)).  Indeed, even material believed to be exculpatory and

17   therefore subject to disclosure under the Brady doctrine, if contained in a witness statement subject

18   to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under

19   the Act.  See United States v. Bernard, 623 F.2d 551, 556-57 (9th Cir. 1979).

20   The government reserves the right to withhold the statements of any particular witnesses

21   it deems necessary until after the witness testifies.  Otherwise, the government will disclose the

22   statements of witnesses at the time of the filing of the government's trial memorandum, provided

23   that defense counsel has complied with Defendant's obligations under Federal Rules of Criminal

24   Procedure 12.1, 12.2, and 16 and 26.2 and provided that defense counsel turn over all "reverse

25   Jencks" statements at that time.

26

27

28    8    07CR3413-BEN

f.   The Government Objects To The Full Production Of Agents' Handwritten Notes At This Time

Although the government has no objection to the preservation of agents' handwritten notes, it objects to requests for full production for immediate examination and inspection.  If certain rough notes become relevant during any evidentiary proceeding, those notes will be made available.

Prior production of these notes is not necessary because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions *and* they have been approved or adopted by the witness.  United States v. Spencer, 618 F.2d 605, 606-607 (9th Cir. 1980); see also United States v. Griffin,  659 F.2d 932, 936-938 (9th Cir. 1981).

g.   All Investigatory Notes and Arrest Reports

The government objects to any request for production of all arrest reports, investigator's notes, memos from arresting officers, and prosecution reports pertaining to Defendant.  Such reports, except to the extent that they include Brady material or the statements of Defendant, are protected from discovery by Rule 16(a)(2) as "reports . . . made by . . . Government agents in connection with the investigation or prosecution of the case."

Although agents' reports may have already been produced to the defense, the government is not required to produce such reports, except to the extent they contain Brady or other such material.  Furthermore, the government is not required to disclose all evidence it has or to render an accounting to Defendant of the investigative work it has performed.  Moore v. Illinois, 408 U.S. 786, 795 (1972); see United States v. Gardner, 611 F.2d 770, 774-775 (9th Cir. 1980).

h.   Expert Witnesses.

Pursuant to Fed. R. Crim. P. 16(a)(1)(G), at or about the time of filing its trial memorandum, the government will provide the defense with notice of any expert witnesses the testimony of whom the government intends to use under Rules 702, 703, or 705 of the Fed. R. of Evidence in its case-in-chief.  Such notice will describe the witnesses' opinions, the bases and the

1   reasons therefor, and the witnesses' qualifications.  Reciprocally, the government requests that the

2   defense provide notice of its expert witnesses pursuant to Fed. R. Crim. P. 16(b)(1)(C).

3                     i.      Information Which May Result in Lower Sentence.

4           Defendant has claimed or may claim that the government must disclose information about

5   any cooperation or any attempted cooperation with the government as well as any other

6   information affecting Defendant's sentencing guidelines because such information is discoverable

7   under Brady v. Maryland.  The government respectfully contends that it has no such disclosure

8   obligations under Brady.

9           The government is not obliged under Brady to furnish a defendant with information which

10  he already knows.  United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986), cert. denied,

11  479 U.S. 1094 (1987); United States v. Prior, 546 F.2d 1254, 1259 (5th Cir. 1977).  Brady is a rule

12  of disclosure.  There can be no violation of Brady if the evidence is already known to Defendant.

13          Assuming that Defendant did not already possess the information about factors which

14  might affect his or her guideline range, the government would not be required to provide

15  information bearing on Defendant's mitigation of punishment until after Defendant's conviction

16  or plea of guilty and prior to his or her sentencing date.  "No [Brady] violation occurs if the

17  evidence is disclosed to the defendant at a time when the disclosure remains of value."  United

18  States v. Juvenile Male, 864 F.2d 641 (9th Cir. 1988).

19
20  **B.      THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE
            INDICTMENT SHOULD NOT BE DISMISSED**

21          **1.      Introduction**

22          Defendant makes contentions relating to two separate instructions given to the grand jury

23  during its impanelment by Judge Burns on January 10, 2007.  Defendant's Memorandum of Points

24  and Authorities at 12-28 (hereafter "Memorandum").[2]  Although recognizing that the Ninth Circuit

25  _____

26          [2] Defendant has attached a partial transcript of the grand jury proceedings which records
    the instructions to the impaneled grand jurors after the voir dire had been conducted.  See Exhibit

27                                                                                    (continued...)

28                                      10                          07CR3413-BEN

1    in <u>United States v. Navarro-Vargas</u>, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the

2    two grand jury instructions constitutional, Defendant here contends that Judge Burns went beyond

3    the text of the approved instructions, and by so doing rendered them improper to the point that the

4    Indictment should be dismissed.

5        In making her arguments concerning the two separate instructions, Defendant urges this

6    Court to dismiss the Indictment on two separate bases relating to grand jury procedures, both of

7    which were discussed in <u>United States v. Isgro</u>, 974 F.2d 1091 (9th Cir. 1992).  Concerning the

8    first attacked instruction, Defendant urges this Court to dismiss the Indictment by exercising its

9    supervisory powers over grand jury procedures.  Memorandum at 26.  This is a practice the

10   Supreme Court discourages as Defendant acknowledges, citing <u>United States v. Williams</u>, 504 U.S.

11   36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it

12   should come as no surprise that we have been reluctant to invoke the judicial supervisory power

13   as a basis for prescribing modes of grand jury procedure.").  <u>Id.</u>  <u>Isgro</u> reiterated:

14          [A] district court may draw on its supervisory powers to dismiss an
          indictment.  The supervisory powers doctrine "is premised on the inherent ability
15        of the federal courts to formulate procedural rules not specifically required by the
          Constitution or Congress to supervise the administration of justice."  <u>Before it may
16        invoke this power, a court must first find that the defendant is actually prejudiced
          by the misconduct.</u>  Absent such prejudice – that is, absent "'grave' doubt that the
17        decision to indict was free from the substantial influence of [the misconduct]" – a
          dismissal is not warranted.

18

19   974 F.2d at 1094 (citation omitted, emphasis added).  Concerning the second attacked instruction,

20   in an attempt to dodge the holding in <u>Williams</u>, Defendant appears to base her contentions on the

21   Constitution as a reason to dismiss the Indictment.  <u>See</u> Memorandum at 28 ("A grand jury so

22

23   ─────────────────

     (...continued)
24   A to Memorandum (hereafter "Exhibit A").  Defendant has also supplied a partial transcript of the
     grand jury proceedings which records the voir dire of several potential witnesses.  <u>See</u> Exhibit B
25   to Memorandum (hereafter "Exhibit B").  To amplify the record herein, the United States is
     supplying a redacted supplemental transcript which records relevant portions of the voir dire
26   proceedings.  <u>See</u> Appendix to United States' Response and Opposition to Defendant's Motions
27   (hereafter "United States' Appendix").

28                                          11                          07CR3413-BEN

badly misguided is no grand jury at all under the Fifth Amendment.").  Concerning that kind of a

contention, Isgro stated:

> [A] court may dismiss an indictment if it perceives constitutional error that
> interferes with the grand jury's independence and the integrity of the grand jury
> proceeding.  "Constitutional error is found where the 'structural protections of the
> grand jury have been so compromised as to render the proceedings fundamentally
> unfair, allowing the presumption of prejudice' to the defendant."  Constitutional
> error may also be found "if [the] defendant can show a history of prosecutorial
> misconduct that is so systematic and pervasive that it affects the fundamental
> fairness of the proceeding or if the independence of the grand jury is substantially
> infringed."

974 F.2d at 1094 (citation omitted).[3]

The portions of the two relevant instructions approved in Navarro-Vargas were:

> You cannot judge the wisdom of the criminal laws enacted by Congress,
> that is, whether or not there should or should not be a federal law designating
> certain activity as criminal.  That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

> The United States Attorney and his Assistant United States Attorneys will
> provide you with important service in helping you to find your way when
> confronted with complex legal problems.  It is entirely proper that you should
> receive this assistance.  If past experience is any indication of what to expect in the
> future, then you can expect candor, honesty, and good faith in matters presented by
> the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was

constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the

policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury

nullification.'"[4]  408 F.3d at 1203 (footnote omitted).  "Furthermore, the grand jury has few tools

---

[3]  In Isgro, the defendants choose the abrogation of constitutional rights route when
asserting that prosecutors have a duty to present exculpatory evidence to grand juries.  They did
not prevail.  974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights
sufficient to support the dismissal of the indictment."  (relying on Williams)).

[4]  The Court acknowledged that as a matter of fact jury nullification does take place, and
there is no way to control it.  "We recognize and do not discount that some grand jurors might in
(continued...)

1    for informing itself of the policy or legal justification for the law;  it receives no briefs or

2    arguments from the parties.   The grand jury has little but its own visceral reaction on which to

3    judge the 'wisdom of the law.'"  Id.

4            Concerning the "United States Attorney and his Assistant United States Attorneys"

5    instruction, the court stated:

6            We also reject this final contention and hold that although this passage may
         include unnecessary language, it does not violate the Constitution.  The "candor,
7        honesty, and good faith" language, when read in the context of the instructions as
         a whole, does not violate the constitutional relationship between the prosecutor and
8        grand jury. . . .  The instructions balance the praise for the government's attorney
         by informing the grand jurors that some have criticized the grand jury as a "mere
9        rubber stamp" to the prosecution and reminding them that the grand jury is
         "independent of the United States Attorney[.]"

10

11   408 F.3d at 1207.  Id.  "The phrase is not vouching for the prosecutor, but is closer to advising the

12   grand jury of the presumption of regularity and good faith that the branches of government

13   ordinarily afford each other."  Id.

14       **2.     The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper**

15           Concerning whether the new grand jurors should concern themselves with the wisdom of

16   the criminal laws enacted by Congress, Judge Burns's full instruction stated:

17           You understood from the questions and answers that a couple of people were
         excused, I think three in this case, because they could not adhere to the principle
18       that I'm about to tell you.

19           But it's not for you to judge the wisdom of the criminal laws enacted by
         congress; that is, whether or not there should be a federal law or should not be a
20       federal law designating certain activity is criminal is not up to you.  That's a
         judgment that congress makes.

21
             And if you disagree with the judgment made by congress, then your option
22       is not to say "Well I'm going to vote against indicting even though I think that the
         evidence is sufficient" or "I'm going to vote in favor of even though the evidence
23       may be insufficient."  Instead, your obligation is to  contact your congressman or
         advocate for a change in the laws, but not to bring your personal definition of what
24

_____

25   (...continued)

26   fact vote to return a no bill because they regard the law as unwise at best or even unconstitutional.
     For all the reasons we have discussed, there is no post hoc remedy for that; the grand jury's
27   motives are not open to examination."  408 F.3d at 1204 (emphasis in original).

28                                          13                        07CR3413-BEN

1    the law ought to be and try to impose that through applying it in a grand jury
     setting.

2

3    Exhibit A at 8-9.[5]

4         In line with <u>Navarro-Vargas</u>, he instructed the grand jurors that they were forbidden "from

5    judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should

6    be a federal law or should not be a federal law designating certain activity [as] criminal is not up

7    to you." Exhibit A at 8. Defendant claims, however, that the instructions "make it painfully clear

8    that grand jurors simply may not choose not to indict in the event of what appears to them to be

9    an unfair application of the law: should 'you disagree with that judgment made by Congress, then

10   your option is not to say 'well, I'm going to vote against indicting even though I think that the

11   evidence is sufficient. . . .'" Memorandum at 18. Defendant contends that this addition to the

12   approved instruction "flatly bars the grand jury from declining to indict because the grand jurors

13   disagree with a proposed prosecution." <u>Id.</u> Defendant further contends that the flat prohibition

14   was preemptively reinforced by Judge Burns when he excused prospective grand jurors.

15        In concocting her theory of why Judge Burns erred, Defendant posits that the expanded

16   instruction renders irrelevant the debate about what the word "should" means. Memorandum at

17   18. Defendant contends that "the instruction flatly bars the grand jury from declining to indict

18   because they disagree with a proposed prosecution." <u>Id.</u> This argument mixes-up two of the

19   holdings in <u>Navarro-Vargas</u> in the hope they will blend into one. They do not.

20        <u>Navarro-Vargas</u> does permit flatly barring the grand jury from disagreeing with the wisdom

21   of the criminal laws. The statement, "[y]ou <u>cannot</u> judge the wisdom of the criminal laws enacted

22   by Congress," (emphasis added) authorized by <u>Navarro-Vargas</u>, 408 F.3d at 1187, 1202, is not an

23

24        [5] The United States' Appendix recounts the excusing of the three individuals. This
     transcript involves the voir dire portion of the grand jury selection process, and has been redacted

25   to include redaction of the individual names, so as to provide only the relevant three incidents
     wherein prospective grand jurors were excused. Specifically, the pages of the supplemental

26   transcript supplied are: United States' Appendix at 15, line 10; 17, line 18; 24, line 14; 28, line 2;

27   38, line 9; and 44, line 17.

28                                                    14                              07CR3413-BEN

expression of discretion.  Jury nullification is forbidden although acknowledged as a sub rosa fact in grand jury proceedings.  408 F.3d at 1204.  In this respect Judge Burns was absolutely within his rights, and within the law, when he excused the three prospective grand jurors because of their expressed inability to apply the laws passed by Congress.  Similarly, it was proper for him to remind the impaneled grand jurors that they could not question the wisdom of the laws.  As we will establish, this reminder did not pressure the grand jurors to give up their discretion not to return an indictment.  Judge Burns's words cannot be parsed to say that they flatly barred the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution, because they do not say that.  That aspect of a grand jury's discretionary power (i.e., disagreement with the prosecution) was dealt with in Navarro-Vargas in its discussion of another instruction wherein the term "should" was germane.[6]  408 F.3d at 1204-06.  This other instruction bestows discretion on the grand jury not to indict.[7]  In finding this instruction constitutional, the court stated in words

---

[6]  That instruction is not at issue here.  It read as follows:

> [Y]our task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged.   To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

[7]  The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence.   The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause.   As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)).  "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment.  408 F.3d at 1206.

15                                07CR3413-BEN

1    that ring true here: "It is the grand jury's position in the constitutional scheme that gives it its

2    independence, not any instructions that a court might offer."  408 F.3d at 1206.  The other

3    instruction was also given by Judge Burns in his own fashion as follows:

4          The function of the grand jury, in federal court at least, is to determine
probable cause.  That's the simple formulation that I mentioned to a number of you
5          during the jury selection process.  Probable cause is just an analysis of whether a
crime was committed and there's a reasonable basis to believe that and whether a
6          certain person is associated with the commission of that crime, committed it or
helped commit it.

7

8          If the answer is yes, then as grand jurors your function is to find that the
probable cause is there, that the case has been substantiated, and it should move
9          forward.  If conscientiously, after listening to the evidence, you say "No, I can't
form a reasonable belief has anything to do with it, then your obligation, of course,
would be to decline to indict, to turn the case away and not have it go forward.

10

11 Exhibit A at 3-4.

12          Probable cause means that you have an honestly held conscientious belief
and that the belief is reasonable that a federal crime was committed and that the
13          person to be indicted was somehow associated with the commission of that crime.
Either they committed it themselves or they helped someone commit it or they were
14          part of a conspiracy, an illegal agreement, to commit that crime.

15          To put it another way, you should vote to indict when the evidence
presented to you is sufficiently strong to warrant a reasonable person to believe that
16          the accused is probably guilty of the offense which is proposed.

17 Exhibit A at 23.

18       While the new grand jurors were told by Judge Burns that they could not question the

19 wisdom of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the

20 discretion not to return an indictment per Navarro-Vargas.  Further, if a potential grand juror could

21 not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be

22 dismissed as a potential jury nullification advocate.  See Merced v. McGrath, 426 F.3d 1076, 1079-

23 80 (9th Cir. 2005).  Thus, there was no error requiring dismissal of this Indictment or any other

24 indictment by this Court exercising its supervisory powers.

25       Further, a reading of the dialogues between Judge Burns and the three excused jurors found

26 in the supplemental transcript excerpts (see United States' Appendix) reflects a measured,

27

28                                         16              07CR3413-BEN

1   thoughtful, almost mutual decision, that those three individuals should not serve on the grand jury

2   because of their views.  Judge Burns's reference back to those three colloquies cannot be construed

3   as pressuring the impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their

4   duties.

5        Finally, even if there was an error, Defendant has not demonstrated she was actually

6   prejudiced thereby, a burden she has to bear. "Absent such prejudice – that is, absent 'grave' doubt

7   that the decision to indict was free from the substantial influence of [the misconduct]' – a dismissal

8   is not warranted."  Isgro, 974 F.2d at 1094.

9
       **3.     The Addition to the "United States Attorney and his Assistant United States
10              Attorneys" Instruction Did Not Violate the Constitution**

11       Concerning the new grand jurors' relationship to the United States Attorney and the

12   Assistant U.S. Attorneys, Judge Burns variously stated:

13       [T]here's a close association between the grand jury and the U.S. Attorney's Office.

14           . . . .  You'll work closely with the U.S. Attorney's Office in your
             investigation of cases.
15

16   Exhibit A at 11.

17       [I]n my experience here in the over 20 years in this court, that kind of tension does
         not exist on a regular basis, that I can recall, between the U.S. Attorney and the
18       grand juries.  They generally work together.

19   Exhibit A at 12.

20           Now, again, this emphasizes the difference between the function of the
         grand jury and the trial jury.  You're all about probable cause.  If you think that
21       there's evidence out there that might cause you to say "well, I don't think probable
         cause exists," then it's incumbent upon you to hear that evidence as well.  As I told
22       you, in most instances, the U.S. Attorneys are duty-bound to present evidence that
         cuts against what they may be asking you to do if they're aware of that evidence.
23
     Exhibit A at 20.[8]
24
     _____
25
       [8]  Just prior to this instruction, Judge Burns had informed the grand jurors that:
26
       [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a
27                                                                        (continued...)

28                                    17                        07CR3413-BEN

1
2
3

As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government lawyers.

4
5
6

But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

7   Exhibit A at 26-27.

8   Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that

9   cuts against what they may be asking you to do if they're aware of that evidence," Defendant

10  proposes that by making that statement, "Judge Burns also assured the grand jurors that

11  prosecutors would present to them evidence that tended to undercut probable cause."

12  Memorandum at 15. Defendant then ties this statement to the later instruction which "advis[ed]

13  the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will

14  be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'" Id.

15  From this lash-up Defendant contends:

16
17
18

These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:

18
19

(1) I have to consider evidence that undercuts probable cause.

19
20

(2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.

21
22

(3) Because no such evidence was presented to me, I may conclude that there is none.

22
23

Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all

24

_____

25
26

(...continued)
full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

27   Exhibit A at 19.

28                    18                        07CR3413-BEN

available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

The instructions therefore discourage investigation – if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be weak, but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

Memorandum at 25-26.[9]

Frankly, Judge Burns's statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."[10] (emphasis added)). See also United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) ("Finally, their challenge to the

_____

[9] The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate. See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster County Court v. Allen, 442 U.S. 140, 157 & n. 16 (1979)). See also United States v. Warren, 25 F.3d 890, 897 (9th Cir. 1994).

[10] Note that in Williams the Court established:

Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury. Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (citation omitted). The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings." 504 U.S. at 55. See also United States v. Haynes, 216 F.3d 789, 797-98 (9th Cir. 2000). However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms. 974 F.2d at 1096.

1    government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because

2    prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury."

3    (citing <u>Williams</u>) (emphasis added)).

4          However, the analysis does not stop there.  Prior to assuming his judicial duties, Judge

5    Burns was a member of the United States Attorney's Office, and made appearances in front of the

6    federal grand jury.[11]  As such he was undoubtedly aware of the provisions in the United States

7    Attorneys' Manual ("USAM").[12]  Specifically, it appears he was aware of USAM Section 9-

8    11.233, which states:

9          In <u>United States v. Williams</u>, 112 S.Ct. 1735 (1992), the Supreme Court
10   held that the Federal courts' supervisory powers over the grand jury did not include
     the power to make a rule allowing the dismissal of an otherwise valid indictment
     where the prosecutor failed to introduce substantial exculpatory evidence to a grand
11   jury. It is the <u>policy</u> of the Department of Justice, however, that when a prosecutor
     conducting a grand jury inquiry is personally aware of <u>substantial evidence that</u>
12   <u>directly negates the guilt</u> of a subject of the investigation, the prosecutor <u>must</u>
     <u>present or otherwise disclose</u> such evidence to the grand jury before seeking an
13   indictment against such a person. While a failure to follow the Department's policy
     should <u>not result in dismissal of an indictment</u>, appellate courts <u>may refer violations</u>
14   <u>of the policy to the Office of Professional Responsibility</u> for review.

15   (Emphasis added.)[13]  This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure

16   of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or

17   supersede the policy that requires prosecutors to disclose 'substantial evidence that directly negates

18

19

20

21        [11] He recalled those days when instructing the new grand jurors.  Exhibit A at 12, 14-16,
22   17-18.

23        [12]  The USAM is available on the World Wide Web at www.usdoj.gov/usao/
     eousa/foia_reading_room/ usam/index.html.
24

25        [13] <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm. Even if
     Judge Burns did not know of this provision in the USAM while he was a member of the
26   United States Attorney's Office, because of the accessability of the USAM on the Internet, as the
     District Judge overseeing the grand jury he certainly could determine the required duties of the
27   United States Attorneys appearing before the grand jury from that source.

28                                  20                    07CR3413-BEN

1  the guilt of a subject of the investigation' to the grand jury before seeking an indictment, see

2  USAM § 9-11.233 ." (Emphasis added.)[14]

3      The facts that Judge Burns's statement contradicts <u>Williams</u>, but is in line with self-

4  imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed

5  by Defendant. No improper presumption/inference was created when Judge Burns reiterated what

6  he knew to be a self-imposed duty to the new grand jurors. Simply stated, in the vast majority of

7  the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because

8  no "substantial" exculpatory evidence exists.[15]  If it does exist, as mandated by the USAM, the

9  evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of

10  possibly having his or her career destroyed by an Office of Professional Responsibility

11  investigation. Even if there is some nefarious slant to the grand jury proceedings when the

12  prosecutor does not present any "substantial" exculpatory evidence, because there is none, the

13  negative inference created thereby in the minds of the grand jurors is legitimate. In cases such as

14  Defendant's, the Government has no "substantial" exculpatory evidence generated from its

15

16

---

17      [14] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly,
18  this new section does not bestow any procedural or substantive rights on defendants.

19          Under this policy, the government's disclosure will exceed its constitutional
20          obligations. This expanded disclosure policy, however, does not create a general
            right of discovery in criminal cases. Nor does it provide defendants with any
21          additional rights or remedies.

22  USAM 9-5.001, ¶"E". See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.
    htm.

23      [15] Recall Judge Burns also told the grand jurors that:

24
25          [T]hese proceedings tend to be one-sided necessarily. . . . Because
            it's not a full-blown trial, you're likely in most cases not to hear the
26          other side of the story, if there is another side to the story.

27  Exhibit A at 19.

28                                  21                      07CR3413-BEN

investigation or from submissions tendered by the defendant.[16]  There is nothing wrong in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution.  In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything  to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment.  974 F.2d at 1096 ("Williams clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations.").  That the USAM imposes a duty on United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed policy.[17]  Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or any case.  The grand jurors were

---

[16]  Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder.  Therefore, defense submissions to the grand jury will be few and far between.

[17]  The apparent irony is that although an Assistant U.S. Attorney will not lose a case for failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her job with the United States Attorney's Office for such a failure per the USAM.

1    repeatedly instructed by Judge Burns that, in essence, the United Sates Attorneys are "good guys,"

2    which was authorized by <u>Navarro-Vargas</u>. 408 F.3d at 1206-07 ("laudatory comments . . . not

3    vouching for the prosecutor"). But he also repeatedly "remind[ed] the grand jury that it stands

4    between the government and the accused and is independent," which was also required by

5    <u>Navarro-Vargas</u>. 408 F.3d at 1207. In this context the unnecessary "duty-bound" statement does

6    not mean the instructions were constitutionally defective requiring dismissal of this indictment or

7    any indictment.

8        The "duty bound" statement constitutional contentions raised by Defendant do not indicate

9    that the "'structural protections of the grand jury have been so compromised as to render the

10   proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and

11   "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and

12   pervasive that it affects the fundamental fairness of the proceeding or if the independence of the

13   grand jury is substantially infringed." <u>Isgro</u>, 974 F.2d at 1094 (citation omitted). Therefore, this

14   Indictment, or any other indictment, need not be dismissed.

15   **C.**    <u>**NO OPPOSITION TO LEAVE TO FILE FURTHER MOTIONS**</u>

16       The United States does not object to the granting of leave to allow Defendant to file further

17   motions, as long as the order applies equally to both parties and additional motions are based on

18   newly discovered evidence or discovery provided by the United States subsequent to the instant

19   motion at issue.

20                                      **IV**

21                                 <u>**CONCLUSION**</u>

22       For the foregoing reasons, the government respectfully requests that Defendant's motions,

23   except where not opposed, be denied.

24   //

25   //

26   //

27

28                                 23                    07CR3413-BEN

1

2    DATED: January 28, 2008.

3                                               Respectfully submitted,

4                                               KAREN P. HEWITT
                                                United States Attorney

5

6                                               s/ William A. Hall, Jr.
                                                WILLIAM A. HALL, JR.
7                                               Assistant United States Attorney

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        24                     07CR3413-BEN